UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAKOTANS FOR HEALTH, RICK WEILAND, ADAM WEILAND,<br><br>        Plaintiffs,<br><br>vs.<br><br>BOB EWING, IN OFFICIAL CAPACITY; BRANDON FLANAGAN, IN OFFICIAL CAPACITY; RANDY DEIBERT, IN OFFICIAL CAPACITY; RICHARD SLEEP, IN OFFICIAL CAPACITY; ERIC JENNINGS, IN OFFICIAL CAPACITY; AND LAWRENCE COUNTY COMMISSIONERS, IN OFFICIAL CAPACITY;<br><br>        Defendants. | 5:23-CV-05042-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES |

Plaintiffs Rick Weiland, Adam Weiland, and Dakotans for Health obtained a temporary restraining order (TRO) barring Defendants—the Lawrence County Commission and its five members—from enforcing part of a political activity policy on the Lawrence County Campus. Doc. 12. Defendants agreed that the TRO should be extended and when Plaintiffs sought to obtain preliminary injunctive relief, told Plaintiffs that they "will obey the TRO even if it expires [and were] working on drafting a new policy." Docs. 13, 16, 16-1. Defendants eventually changed their policy, mooting this case. The question here is whether Plaintiffs are prevailing parties entitled to attorney's fees under federal law. This Court concludes that they are.

I.      **Facts**

This case arises from Plaintiffs' petition circulation activities around the Lawrence County government buildings located in the county seat of Deadwood, South Dakota. Although this Court did not conduct an evidentiary hearing or make findings of fact, the underlying core facts are not disputed. Plaintiffs drafted and helped circulate petitions to place measures on the November 2024 ballot in South Dakota that, as they put it, "would allow the people of South Dakota to chose to restore their <u>Roe v. Wade</u> rights, and to eliminate the state sales tax on food." Doc. 1 ¶ 9. Defendants (or perhaps some of their predecessors) in 2020 had adopted Resolution # 2020-09 that prohibited petition circulators from being on public sidewalks surrounding county buildings while circulating petitions and restricted that activity to a "designated area" in a plaza between the Lawrence County Annex and Lawrence County Courthouse. Doc. 1-1 at 1–2. The Policy had other provisions regulating behavior of petition circulators that Plaintiffs did not challenge.

Leah Bothamley, a petition circulator for Plaintiffs, was collecting signatures on June 12, 2023, while standing on the public sidewalk in front of the Annex building near to where Lawrence County citizens would enter to conduct business with county offices. A county employee approached her and handed her a copy of the Policy; Bothamley then moved to the designated area, where it was "obvious to [her] that this would be a much poorer location from which to attempt to obtain petition signatures." Doc. 5 ¶¶ 2–5. This designated area was away from the highly trafficked public sidewalks outside the Administrative Annex building where Plaintiffs had historically circulated petitions.

Plaintiffs sued Defendants under 42 U.S.C. § 1983 on June 20, 2023, alleging that the Policy violated the First Amendment by restricting their rights to engage in core political speech and place issues on the ballot. Doc. 1. Their complaint requested a TRO, preliminary and permanent injunctive relief, and attorney's fees and costs. Doc. 1. Plaintiffs moved for a TRO the

2

same day they filed their complaint, asking this Court to temporarily restrain Defendants from enforcing or threatening to enforce the Policy. Docs. 2, 7. Plaintiffs emailed the complaint, the motion for a temporary restraining order, and the accompanying filings to the Lawrence County state's attorney and deputy state's attorney on June 20. Doc. 36; Doc. 36-1 at 1.

This Court granted in part Plaintiffs' motion for a TRO in a 17-page opinion issued on June 22, 2023. Doc. 12. Reviewing the Dataphase[1] factors, this Court concluded that Plaintiffs were likely to succeed on the merits because the Policy appeared to prohibit petition circulation—an activity that triggers the First Amendment's highest level of protection—on public sidewalks.[2] Since the public sidewalk outside the Annex building was a traditional public forum, the Policy needed to be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information."[3] Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (cleaned up and citation omitted). The Policy failed this test, this Court explained, because it not only hamstrung Plaintiffs' chosen method of communication by confining them to the designated area away from pedestrian traffic into the Annex building, but also burdened substantially more speech than necessary to achieve the Policy's justifications of preserving public safety and allowing citizens to conduct business with the county without unnecessary disruption. This Court barred Defendants from enforcing or threatening to enforce the portion of the Policy restricting petition circulation to the designated area. Doc. 12. The TRO

---

[1] Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

[2] When Defendants eventually answered the complaint, they did not dispute that the Policy prohibited petition circulation on the sidewalk in front of the Annex building. Doc. 18 ¶ 16. Rather, Defendants responded that the Policy "speaks for itself and allows petition circulators a specifically designated area to gather signatures." Id.

[3] As an affirmative defense, Defendants' answer claimed that the Policy was "a content neutral, reasonable time, place, and manner restriction that is narrowly tailored to serve a significant governmental interest." Doc. 18 ¶ 1. Defendants did not claim that a less stringent standard of review applied because the sidewalk outside the Annex building was not a public forum.

3

allowed Defendants to enforce other portions of the Policy not challenged by Plaintiffs. Id. at 16. The TRO opinion ended by directing the parties to cooperate to set "a preliminary injunction hearing at the earliest possible time." Id. at 17.

The parties agreed to extend the TRO, Doc. 13, and this Court extended the order another 14 days, Doc. 15. A few weeks later, Plaintiffs filed a notice that Defendants had agreed to obey the TRO after it expired on July 20. Doc. 16. The notice attached an email string between Plaintiffs' and Defendants' counsel. Doc. 16-1. The email chain began with Plaintiffs' counsel noting that he had attached "a proposed Consent Motion to Preliminary Injunction Without Bond," explaining that the TRO was soon to expire, and asking if the consent motion was acceptable to Defendants. Id. After receiving no response for two days, Plaintiffs' counsel wrote: "Please let me hear from you re this. If we can't reach an agreement, I need to ask the Court for relief." Id. Defendants' counsel then replied "I have to speak with my clients—but I can promise you that the County will obey the TRO even if it expires. We are working on drafting a new policy." Id. The TRO then effectively was in place for 110 days by consent of the parties.[4]

Defendants answered the complaint in mid-August 2023. Doc. 18. On October 10, 2023, Defendants adopted a revised Policy allowing petition circulation on public sidewalks surrounding the County's buildings. In November 2023, Plaintiffs moved to dismiss all issues without prejudice except for attorney's fees and costs. Docs. 25, 26. Defendants agreed that the new Political Activity Policy mooted the case but did not agree that Plaintiffs could recover attorney's

---

[4]Plaintiffs argue that the TRO became a preliminary injunction. There are some circumstances where courts have deemed that to have occurred. "When a TRO is extended beyond the 28-day limit without the consent of the enjoined party, it becomes in effect a preliminary injunction that is appealable, but the order remains effective." H-D Mich., LLC v. Hellenic Duty Free Shops S.A., 694 F.3d 827, 844 (7th Cir. 2012); see also Nordin v. Nutri/Sys., Inc., 897 F.2d 339, 343 (8th Cir. 1990) (holding that a temporary restraining order that exceeded the time limit in Rule 65(b) and had no expiration date on its face must be treated as an appealable preliminary injunction).

fees or costs. Doc. 27. This Court granted Plaintiffs' motion for voluntary dismissal but reserved ruling on the attorney's fees issue. Doc. 28. Plaintiffs now move for $19,238.90[5] in attorney's fees and costs, arguing that they are the prevailing party under 42 U.S.C. § 1988. Docs. 29, 31, 38.

## II.   Analysis

### A. Prevailing Party

Section 1988(b) authorizes reasonable attorney's fees to the "prevailing party" in civil rights actions. 42 U.S.C. § 1988(b); Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 602–03 (2001). "Prevailing party" is a "legal term of art," Buckhannon, 532 U.S. at 603, defined by the Supreme Court as one who obtains a judicially sanctioned, "material alteration of the legal relationship of the parties," id. at 604 (cleaned up and citation omitted); see also Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). Two Supreme Court decisions—Buckhannon and Sole v. Wyner, 551 U.S. 74 (2007)—provide guidance for determining whether the TRO under these circumstances qualifies as a judicially sanctioned "material alteration of the legal relationship" such that Plaintiffs are a prevailing party entitled to attorney's fees.

The Court in Buckhannon held that the term "prevailing party" did not encompass a plaintiff whose lawsuit merely was a "catalyst" that "achieve[d] the desired result because [it] brought about a voluntary change in the defendant's conduct." 532 U.S. at 601. The plaintiffs in

---

[5]Plaintiffs first requested a lesser amount but have since filed a notice of computational error listing $19,238.90 as the appropriate amount. Doc. 38.

Buckhannon sued West Virginia for declaratory and injunctive relief, claiming that a "self-preservation" requirement[6] in a state statute violated federal law. Id. at 600–01. West Virginia agreed to stay enforcement of cease-and-desist orders based on the requirement, and the parties began discovery. Id. at 601. Not much later, West Virginia eliminated the self-preservation requirement from its statutes and successfully moved to have the case dismissed as moot. Id. Although this voluntary change by West Virginia achieved the purpose of the plaintiffs' suit, the Court found that the change "lack[ed] the necessary judicial *imprimatur*" for prevailing-party status. Id. at 605. Rather, the plaintiff must secure a "judicially sanctioned change in the legal relationship of the parties" to be considered a prevailing party. Id. The district court handling Buckhannon had entered no TRO or preliminary injunction. Id. at 601. Reviewing prior decisions, the Court identified enforceable judgments and settlements enforceable through a consent decree as creating the requisite court-ordered change. Id. at 604.

The Sole decision required that the change in the legal relationship between the plaintiff and defendant be "enduring" to create prevailing-party status. 551 U.S. at 86. The plaintiff in Sole sued Florida over a state regulation requiring park visitors to wear at least bathing suits. Id. at 79. The plaintiff sought to immediately enjoin Florida from enforcing the regulation against her upcoming nude art display and permanently enjoin Florida from enforcing the regulation against future expressive activities. Id. The district court held an abbreviated hearing and granted the plaintiff a preliminary injunction the day after the complaint was filed. Id. After discovery, however, the district court granted Florida summary judgment on the merits, finding that the regulation was not unconstitutional as applied to the plaintiff's expressive activities. Id. at 85–86.

---

[6]West Virginia had required that all residents of "residential board and care homes" be capable of "self-preservation," meaning being capable of moving away "from situations involving imminent danger, such as fire." Buckhannon, 532 U.S. at 600 (cleaned up and citations omitted).

The Supreme Court rejected the plaintiff's claim for attorney's fees, holding that a preliminary injunction does not establish prevailing-party status if it is "reversed, dissolved, or otherwise undone by the final decision in the same case." Id. at 83. The Court reserved ruling on "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." Id. at 86.

The Eighth Circuit answered this question in the affirmative, concluding that "a preliminary injunction can in some instances carry the judicial imprimatur required to convey prevailing party status." Spirit Lake Tribe v. Jaeger, 5 F.4th 849, 854 (8th Cir. 2021) (cleaned up and citation omitted); see also Bishop v. Comm. on Pro. Ethics & Conduct of Iowa State Bar Ass'n, 686 F.2d 1278, 1290 (8th Cir. 1982) ("Even preliminary or temporary relief granted by the district court may be sufficient to make a plaintiff a 'prevailing party' under section 1988."). So, for instance, the Eighth Circuit held that a plaintiff was a prevailing party where the district court entered a preliminary injunction barring the defendant city from enforcing an ordinance against the plaintiff. Rogers Grp., Inc. v. City of Fayetteville, 683 F.3d 903, 910–11 (8th Cir. 2012). The preliminary injunction was enough, the court explained, because it changed the legal relationship between the parties, involved a finding that the plaintiff was likely to succeed on the merits, constituted a judgment rendered in the plaintiff's favor, and afforded the plaintiff judicial relief. Id.

The Eighth Circuit in Rogers distinguished between preliminary injunctions that confer prevailing-party status and those that do not. Unlike an injunction that changes the legal relations between the parties, "a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status." Id. at 910 (cleaned up and citation omitted). "These types of preliminary injunctions have nothing to do with the merits, offering no insight into

7

whether one party or the other will prevail at the end of the case" and "turn more on the grave risks of irreparable harm to one party or to the public interest." Id. (cleaned up and citation omitted). This same concern about injunctions merely maintaining the status quo had led the Eighth Circuit in an earlier case to reject an argument that the TRO in Paragould Music Co. v. City of Paragould, 738 F.2d 973 (8th Cir. 1984) (per curiam), conveyed prevailing-party status. The plaintiffs in Paragould Music sued a city and its police officers for allegedly harassing and illegally arresting customers at plaintiffs' video arcade. 738 F.2d at 974. The district court partially granted the plaintiffs' motion for a TRO, enjoining a police officer from arresting or harassing plaintiffs' patrons. Id. The case was eventually dismissed as moot because the arcade closed. Id. The Eighth Circuit held that the plaintiffs were not prevailing parties because the TRO "was in no way a determination on the merits and merely preserved the status quo when the [plaintiffs] might have been irreparably harmed if temporary relief were not granted." Id. at 975 (cleaned up and citation omitted); see also Rodabaugh v. Sullivan, 943 F.2d 855, 858 n.3 (8th Cir. 1991) (explaining that a TRO would not have made plaintiff the prevailing party even if the district had jurisdiction to issue it because everything the plaintiff obtained was available without the TRO).

TROs, in rare circumstances, can confer prevailing-party status when they do more than just preserve the status quo and lead to enduring relief. See LSO, Ltd. v. Stroh, 205 F.3d 1146 (9th Cir. 2000); Common Cause Ga. v. Georgia, 17 F.4th 102 (11th Cir. 2021); Roe v. Folts-Oberle, 21CV3073, 2021 WL 2043114 (D. Neb. May 21, 2021). The plaintiff in Stroh sued state officials after they allegedly threatened a convention center with sanctions if the center allowed the plaintiff to display erotic art on center premises. 205 F.3d at 1150–51. The district court entered a TRO the day after the plaintiff filed suit prohibiting state officials from interfering with the plaintiff's planned art exhibition. Id. at 1152. This made the plaintiff a prevailing party, the

Ninth Circuit held, because the TRO went beyond preserving the status quo. Id. at 1161. Rather than freezing things as they were, the TRO allowed the plaintiff's exhibition to occur and prevented the state officials from interfering with it. Id. The Eleventh Circuit likewise held that a TRO conferred prevailing-party status when the district court not only found that the plaintiff had "shown a substantial likelihood" of succeeding on the merits of one of its claims, but also ordered a state official to change his behavior in ways that benefited the plaintiff and its members. Common Cause, 17 F.4th at 107–08. The Eleventh Circuit found "no basis for distinguishing between preliminary injunctions—which may confer prevailing party status under our precedent— and the temporary restraining order here, which provided the Secretary notice of the application for the temporary restraining order and awarded merits-based relief." Id. at 107 (cleaned up and citation omitted).

TROs rarely will be enough to confer prevailing-party status.[7] But this is a unique situation where one does. The TRO—a 17-page decision discussing the Dataphase factors as applied to the Policy at issue—materially altered the legal relationship between the parties by modifying Defendants' behavior in a way that benefited Plaintiffs. Before the TRO, Defendants used the Policy to prohibit Plaintiffs from circulating petitions on the public sidewalk outside the Annex building. The TRO changed this by barring Defendants from enforcing the portion of the Policy

---

[7]The Second Circuit explained why this is so in Mastrio v. Sebelius, 768 F.3d 116 (2d Cir. 2014) (per curiam):

> It is worth noting that most TROs are designed to preserve the status quo and do not properly address the merits. A TRO is typically issued on the strength of the plaintiff-movant's papers with little or no notice to the non-movant. Due process is sacrificed to the exigencies of the emergency prompting this very preliminary relief. It is not at all surprising, therefore, that courts generally do not view one who obtains a TRO as a "prevailing party."

Id. at 122 n.4.

restricting petition circulation to a designated area. After the TRO, Plaintiffs could circulate petitions on the public sidewalk in front of the Annex building so long as they complied with the rest of the Policy. This is not the mere catalyst case where a plaintiff seeks out a dispute by challenging a statute that has never been enforced against it, argues that the statute nevertheless has a chilling impact, and thereby prompts a change because the governmental agency believes it better to revise the statute than to fight the suit.

Defendants agreed to extend the TRO and to abide by the TRO after it expired. What prevented Plaintiffs from seeking a preliminary injunction was Defendants' "promise" that the "County will obey the TRO even if it expires" and was "working on drafting a new policy." Doc. 16-1. Plaintiffs justifiably argue that not finding them to be a prevailing party here would incentivize plaintiffs not to trust an opposing party's promise to correct an unconstitutional policy and instead insist on obtaining a preliminary injunction despite the defendant's pledge to abide by the TRO, simply to secure being a "prevailing party" thereby unnecessarily increasing the attorney's fees claim. This case differs from Buckhannon because Plaintiffs here obtained a TRO fully discussing the issues and enjoining Defendants from enforcing the Policy, which effectively stayed in place by consent of the parties for the pendency of the case; Plaintiffs do not rely on the catalyst theory as in Buckhannon. This case differs from instances like the TRO in Paragould Music because this TRO addressed the merits and only became moot after Defendants changed the Policy. And this case is different from Sole, where the plaintiff lost a final decision on the merits.

Nor, as Defendants argue, was the TRO divorced from the merits and entered to merely maintain the status quo. The TRO offered significant insight into who would ultimately prevail, with this Court analyzing the merits of Plaintiffs' claim for over six pages and concluding that the

10

Policy appeared to violate the First Amendment. The TRO did more than just find that Plaintiffs would suffer irreparable injury without relief and went beyond maintaining the status quo. See Stroh, 205 F.3d at 1161 (finding that a TRO did more than preserve the status quo because it allowed the plaintiff's art exhibition to take place and altered the legal relationship of the parties by prohibiting defendants from interfering with the exhibition); Rogers, 683 F.3d at 910 (holding that a preliminary injunction was not one that just maintained the status quo where the district court "engaged in a thorough analysis of the probability that [Plaintiff] would succeed on the merits"); see also Roe, 2021 WL 2043114, at *2–4.

Defendants make two other arguments for why Plaintiffs are not prevailing parties, but neither is persuasive. Defendants argue first that Plaintiffs cannot be prevailing parties because the TRO was not an appealable judgment. They claim that the Eighth Circuit's decision in Rogers makes an appealable judgment a condition of being a prevailing party. That was not what Rogers held, however. Instead, Rogers referred to a District of Columbia case that identified "three core principles" for courts to consider when deciding whether a preliminary injunction creates prevailing-party status. Rogers, 683 F.3d at 910 (quoting Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 946 (D.C. Cir. 2005)). One of these principles is that "a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Id. (quoting Select Milk, 400 F.3d at 947). Although the Eighth Circuit found that the preliminary injunction constituted a judgment and thus favored an award of attorney's fees, it did not say that an appealable judgment was always necessary for prevailing-party status. Id. at 911.

Defendants' second argument is that Plaintiffs are not prevailing parties because Defendants had no chance to respond to the motion for a TRO. Defendants are correct that hastily entered preliminary relief can militate against prevailing-party status, especially when the

opposing party has little or no chance to respond. See Sole, 551 U.S. at 84. But while Defendants did not get to argue the TRO or present evidence, this Court was still able to thoroughly analyze the merits of Plaintiffs' First Amendment claim. See id. (explaining that the foundation for a court's assessment of the merits at the preliminary injunction stage "will be more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court"). Ultimately, the core facts of what occurred were and still are not disputed, and the question of the constitutionality of the Policy as written was largely a legal one. Defendants thereafter agreed to extend the TRO and treat it as if it were a preliminary injunction until revising their Policy to moot the constitutional issue. In the unique circumstances here, Defendants' inability to respond to the TRO does not deprive Plaintiffs of prevailing-party status.

   **B. Reasonableness**

   Plaintiffs bear "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Miller v. Dugan, 764 F.3d 826, 831 (8th Cir. 2014) (cleaned up and citation omitted). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) ( cleaned up and citation omitted). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." Hanig, 415 F.3d at 825. "Hours that are excessive, redundant, or otherwise unnecessary must be excluded from the district court's determination of reasonable time expended on the case." Miller, 764 F.3d at 832 (cleaned up and citation omitted).

12

Although Defendants argue that Plaintiffs are not prevailing parties, they do not contest the reasonableness of Plaintiffs' hourly rate, the hours expended, or the costs claimed. This Court has nevertheless reviewed the evidence Plaintiffs submitted and finds reasonable the costs claimed, requested hourly rate, and hours expended.

**III.    Conclusion**

For the reasons stated above, it is

ORDERED that Plaintiffs' Motion for Attorney Fees and Costs, Doc. 29, is granted. It is further

ORDERED that Defendants pay James D. Leach attorney's fees and costs in the amount of $19,238.90.

DATED this 10th day of July, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

13