1               UNITED STATES DISTRICT COURT
              DISTRICT OF SOUTH DAKOTA
2                 SOUTHERN DIVISION

3   * * * * * * * * * * * * * * * * * * * * * * * * *
                   )
4   DAKOTANS FOR HEALTH,     )
    RICK WEILAND, ADAM      )
5   WEILAND,               )  DOCKET NO.
                   )  5:23-cv-5042-RAL
6        Plaintiffs,     )
                   )
7    -vs-               )  Rapid City, South Dakota
                   )  Courtroom 1
8   BOB EWING, BRANDON     )
    FLANAGAN, RANDY DEIBERT, )
9   RICHARD SLEEP, ERIC    )  July 3, 2024
    JENNINGS, LAWRENCE     )  10:58 a.m.
10  COUNTY COMMISSIONERS,  )
                   )
11       Defendants.     )
                   )
12   * * * * * * * * * * * * * * * * * * * * * * * * *

13          TRANSCRIPT OF MOTION HEARING

14     BEFORE THE HONORABLE ROBERTO A. LANGE
          UNITED STATES DISTRICT JUDGE

15   * * * * * * * * * * * * * * * * * * * * * * * * *

16   APPEARANCES:

17
   For the Plaintiff:     JAMES D. LEACH
18                  1617 Sheridan Lake Road
                  Rapid City, SD 57702
19
   For the Defendant:    RICHARD M. WILLIAMS
20                  Gunderson, Palmer, Nelson &
                  Ashmore, LLP
21                  506 Sixth Street
                  PO Box 8045
22                  Rapid City, SD 57709-8045

23

24

25

1          (Proceedings in open court at 10:58 a.m.)

2               THE COURT:  Good morning, everyone.  The Court

3     is on the record in the case of Dakotans for Health, Rick

4     Weiland, and Adam Weiland versus Bob Ewing, Brandon

5     Flanagan, Randy Deibert, Richard Sleep, and Eric Jennings in

6     their official capacities as Lawrence County commissioners.

7               Will plaintiffs' attorney please notice appearance.

8               MR. LEACH:  Your Honor, Jim Leach for plaintiffs.

9     I've been advised to remain seated, so I'm fighting every bone

10    in my body that wants to stand up when I talk to you.

11              THE COURT:  Right.  Do please remain seated

12    throughout the hearing.  It does assist the court reporter, who

13    is appearing remotely, to capture everything that was said.

14              Good morning, Mr. Leach.

15              Mr. Williams, will counsel for defendants please

16    notice appearance.

17              MR. WILLIAMS:  Good morning, Your Honor.

18    Richard Williams for defendants in this matter.  I'm here today

19    with Ben Titus.  Ben is a summer associate with our office.

20    For some reason we called them that.  Everyone else would

21    know them as summer interns.

22              THE COURT:  Welcome, Mr. Titus.

23              MR. TITUS:  Thank you.

24              THE COURT:  For what it's worth, I've had three

25    different summers where I've worked as a summer intern.

1    Each firm called us summer associates.  That was in Chicago,

2    New York, and in Minneapolis.  At the firm that I practiced at

3    for 20 years, I would have just called them summer

4    associates.  I think that's more appropriate than interns.

5            At any rate, the Court is somewhat torn on what to

6    do with the pending motion for attorney's fees filed by the

7    plaintiffs.  And to somewhat frame where the Court has been,

8    you know, intellectually with this, I'm not hung up on the

9    hourly rate -- Mr. Leach is an outstanding attorney -- or the

10   overall amount claimed.  My initial reaction was, sure.  The

11   plaintiffs are the prevailing party here, after all.  They received

12   a temporary restraining order, which was voluntarily then

13   extended by consent of the parties, and even beyond the point

14   where a temporary restraining order would have to expire, and

15   the defendants made a policy change that the plaintiffs were

16   seeking.

17           I think what was in my thinking was basically the

18   catalyst theory that the *Buckhannon* case from the Supreme

19   Court rejected; you know, the natural thought, well, the

20   catalyst for the change in the policy was the lawsuit and the

21   plaintiffs' position.  So initially that was my approach.  And

22   then I got to reading a bit more.  And while it's possible to find

23   a case outside of the Eighth Circuit where the entry of a

24   temporary restraining order is deemed to be a trigger for

25   attorney's fees under § 1988 as having some judicial

1    imprimatur that changes a relationship of the parties, there

2    doesn't appear to be any authority from the Eighth Circuit

3    endorsing that approach.

4         So what I wanted to do is hear from very capable

5    counsel from both sides here in Mr. Leach and Mr. Williams

6    argument on whether what occurred -- the Temporary

7    Restraining Order entered the day after the case was assigned

8    to me, two days after it was started -- and I guess what trailed

9    after that renders the plaintiffs the prevailing party for

10   purposes of § 1988, recovery of attorney's fees.

11        Mr. Leach, I'll hear from you first.  And please

12   remain seated as you address that issue.

13        MR. LEACH:  We know from *Buckhannon* that the

14   critical issue is whether there is a materially sanctioned

15   judicial alteration in the relationship of the parties.  If I were

16   to say those words in the right order, it would be judicially

17   sanctioned material alteration.

18        Well, we know that there was a judicially sanctioned

19   alteration.  That was your order.  We know that it was

20   material because it completely overturned existing practice

21   and required the defendants to let petition circulators stand

22   right in front of the courthouse.

23        THE COURT:  I think the Annex building.

24        MR. LEACH:  Annex building.  That's what I should

25   have said.  Right in front of the Annex building instead of

1    being confined to the little square in the middle where they

2    had been confined.  So we did have a judicially sanctioned

3    material alteration, completely unlike all those TRO cases that

4    only preserve the status quo.  And, in fact, the *Northern*

5    *Cheyenne Tribe v. Jackson* case that went to the Eighth

6    Circuit, that was my case, and I lost that one because all I had

7    got was a preservation of the status quo with no judicially

8    sanctioned material alteration.  But here we have that.

9         And so the question about a temporary restraining

10   order raised by the defendants -- they can cite a whole lot of

11   cases that say that, well, a temporary restraining order is not

12   sufficient.  But when you look at those cases, all the ones I

13   looked at just involved maintaining the status quo with no

14   material alteration, exactly the opposite of what we had here.

15        And so in this case we do have the judicially

16   sanctioned material alteration, without question.

17        THE COURT:  What do you make, Mr. Leach, of the

18   Eighth Circuit case of *Rogers Group* decided in 2012, which

19   would be after *Buckhannon* and *Sole*, that borrows a

20   three-core-principles approach from the DC Circuit case of

21   *Select Milk Producers*, where what you've addressed is really

22   just the first element of this three-core principles, which is *to*

23   *be a prevailing party a claimant must show that there has been*

24   *a court-ordered change in the legal relationship between the*

25   *plaintiff and the defendant.*  There then are two other, I guess,

1    principles that the Eighth Circuit, quoting *Select Milk*

2    *Producers*, states, which is, *second, a prevailing party is a*

3    *party in whose favor a judgment is rendered, regardless of the*

4    *amount of damages awarded.* That's awkward here. A

5    temporary restraining order isn't a judgment. It's an ex parte

6    order that's temporary in nature. *And, third, a claimant is not*

7    *a prevailing party merely by virtue of having acquired a judicial*

8    *pronouncement unaccompanied by judicial relief.* So a

9    temporary restraining order -- I don't know if that qualifies as

10    a judicial pronouncement or if here, in context, it provided

11    judicial relief. I think initially it's a pronouncement, but

12    effectively it became the judicial relief here.

13         So how do you deal with those three core principles

14    that the Eighth Circuit borrowed in its decision of *Rogers*

15    *Group*?

16         MR. LEACH: Right. Well, if I hear you correctly,

17    you're not concerned about the first one.

18         THE COURT: Well, you've addressed the first one.

19         MR. LEACH: Okay. So let me speak to the third

20    one. There was alteration. There was relief. There was the

21    Court's order, because we know before the Court's order

22    Lawrence County had its policy, and after the Court's order it

23    had the policy we wanted.

24         So there were two words you used on the third

25    principle.

1          THE COURT:  I'll just quote *Select Milk Producers*.

2    And this is in the body of the *Rogers Group* Eighth Circuit

3    decision.  *Third, a claimant is not a prevailing party merely by*

4    *virtue of having acquired a judicial pronouncement*

5    *unaccompanied by judicial relief.*

6          MR. LEACH:  Right.  Your order was our relief.  That

7    was everything we wanted.  That's why we came to court.

8    That's why we did everything we did.  And we accomplished

9    that.

10          And I want to -- go ahead.

11          THE COURT:  What about the fact that a temporary

12    restraining order is ex parte?  It's entered based on a verified

13    complaint or affidavit submitted from the moving party in an

14    emergency setting without the opportunity for the defendant

15    to respond.  So what about the fact that the Court has to rely

16    on information in the complaint and affidavit and really isn't

17    making fact findings?  It's preliminary, after all.  Less than

18    preliminary.  It's temporary.  What about that sort of situation

19    where the Court may not even know if there's a dispute or a

20    dispute of fact?  Can I get beyond that here?

21          MR. LEACH:  Yes.  And if all we had here was a

22    temporary restraining order, I'd say, yes, that qualifies

23    because it's a judicially sanctioned material alteration.  But

24    we have so much more than that here that your decision need

25    not rest on that grounds, and I think should not rest on that

1    grounds.

2          As you noted, we have 110 days when actual relief

3    was in effect.  And during that period of time, the defense said

4    to me, and I said to the Court with a copy to the defense,

5    *They're agreeing to abide.*  In fact, the defendants's words, I

6    think, were *We will abide by the Temporary Restraining Order.*

7    *You don't have to have a preliminary injunction hearing.*

8    Because I was pushing the defense attorney at that time,

9    saying *We need to get this on for hearing so we can turn this*

10   *into a preliminary injunction or not.*

11         Her response was, *No, no need.  We will continue to*

12   *abide by the Temporary Restraining Order.*

13         So that lasted for 110 days.

14         Plus, even though you never put the words

15   "Preliminary Injunction" on the front, in my reply brief I've got

16   the cases from the Eighth Circuit that say that it's not the

17   label on the front that controls; it's what the actual document

18   does.  And here we know that the TRO is limited to 14 days,

19   extendable, potentially, for another 14 days.  And when

20   something is in effect as this was, based on the defense

21   stipulation, for 110 days, that's a preliminary injunction.  And

22   so to the extent there's any concern about whether this was

23   an appealable order, it absolutely was appealable because, of

24   course, a preliminary injunction is appealable as a right.  So it

25   was in effect that long as a preliminary injunction as a matter

1    of law, no matter what the name on the front of it was.

2        THE COURT:  Is there any authority that once a

3    temporary restraining order expires by virtue of 14 days

4    elapsing and then another 14 days elapsing, that when the

5    parties notify the Court that *No hearing is necessary, we've*

6    *agreed to abide by the terms of the TRO*, that that renders it a

7    preliminary injunction?

8        MR. LEACH:  Well, I don't know of any case saying

9    that, but that seems to me just what has been agreed to.  I

10    mean, they're agreeing *We Will Abide By This Order*.  And

11    they're saying *You don't have to go to court and have a*

12    *preliminary injunction hearing*.  And so that makes it a

13    preliminary injunction as a matter of law, regardless of the

14    name on it.

15        THE COURT:  I find that an interesting argument.

16    I'm trying to think of what happens if they -- this obviously

17    didn't occur -- but say a month into the case they were to

18    again provide your petition circulator with the policy and

19    direct the petition circulator to the restricted zone kind of in

20    between the two buildings apart from the sidewalks.  My

21    suspicion is you would have come in again with another

22    motion for temporary restraining order rather than some sort

23    of motion to enforce a preliminary injunction.

24        MR. LEACH:  Well, I would have moved to enforce

25    the existing court order because they had stipulated they

1    would abide by it.  And I think that when --

2         THE COURT:  Was it a formal stipulation or was it

3    just kind of an informal notification to the Court?  I just don't

4    recollect.

5         MR. LEACH:  It was informal, but I don't think

6    there's any difference between the two.  I mean, if on behalf of

7    my client I say to the Court *We will do this*, which defense

8    counsel said in her email, you know, *We will agree to do this,*

9    *to abide by this.*

10        THE COURT:  Did the email get filed, by chance?

11        MR. LEACH:  Yes.  It was attached to what I

12   submitted, so the Court had that.  I mean, when an attorney

13   says that, at least in this part of the country, I think we all

14   rely on it.  I don't think that it would have been well taken had

15   I said to the Court, *Well, I demand a preliminary injunction*

16   *hearing.  Ms. Mann, the defense attorney, wrote me this email*

17   *saying she will abide by the Temporary Restraining Order, but I*

18   *don't trust her.  I don't believe her.  I have my rights, and I have*

19   *a right to a preliminary injunction hearing.*  And I think the

20   Court would have probably looked at me like, you know, I've

21   lost my mind, because I think that's how we all would look at

22   an attorney who said that another attorney -- with no grounds

23   to say it -- said that another attorney's word given in writing

24   could not be trusted.  And I just don't think that's the kind of

25   system we have, nor should we have it.

1          But if you were to rule that I lost my attorney's fees

2    because I neglected to tell the Court that I didn't trust

3    Ms. Mann and that, et cetera, next time I'm going to demand

4    my preliminary injunction hearing.

5          THE COURT:  I don't want to tether a ruling to that,

6    obviously.  All right.

7          Anything else, Mr. Leach?

8          MR. LEACH:  Yeah.  I'd like to respond to a couple

9    other things you mentioned.  You said there was no Eighth

10   Circuit case on temporary restraining order as a ground for

11   attorney's fees.  There is that Nebraska case.  I'm not sure if

12   you mean --

13         THE COURT:  The district court case.  I meant

14   Eighth Circuit, as in the United States Court of Appeals for

15   the Eighth Circuit.

16         MR. LEACH:  Yes.  In that sense, no, there isn't.

17         But the other subject you brought up I wanted to

18   address is that second part of *Rogers v. City of Fayetteville*, the

19   language that says, quote, "*a prevailing party is a party in*

20   *whose favor a judgment is rendered, regardless of the amount*

21   *of damages awarded.*"  Okay?

22         Well, I got two things to tell you about that.  Number

23   one, I agree:  "*a prevailing party is a party in whose favor a*

24   *judgment is rendered.*"  But it does not say a party in whose

25   favor a judgment is not rendered cannot be a prevailing party.

1    In other words, that's one way to be a prevailing party,

2    without doubt; but the converse is not also true.

3                 THE COURT:  Right.  I would agree with you that

4    these are core principles.  It's not a three-part test, for

5    example, that the Eighth Circuit is articulating.  And there are

6    some instances where a preliminary injunction, which isn't

7    really a final judgment, has been deemed sufficient to justify

8    an award of attorney's fees.  So I do recognize that.

9                 MR. LEACH:  And just to go on from there on that

10    same language, "*a prevailing party is a party in whose favor a*

11    *judgment is rendered.*"  Well, even if it said *a party is not*

12    *prevailing unless a judgment is rendered in that party's favor,*

13    the effective preliminary injunction, because it was

14    appealable, is effectively a judgment.

15                 For example, when Judge Piersol entered a

16    preliminary injunction in the SB 180 case, which the cite on it

17    from the Eighth Circuit was 52 F.3d -- 52 F.4th 381 in 2022.

18    But when Judge Piersol issued the district court opinion in

19    that case, the preliminary injunction, it says "judgment,"

20    issued a judgment for preliminary injunction, because he

21    knew that the defendants were going to appeal it, so he called

22    it a judgment.  So a preliminary injunction is a judgment.  It's

23    a form of a judgment that's appealable like any other

24    judgment.

25                 THE COURT:  Of course the defendants would say

1  *We never got to a preliminary injunction.*

2         MR. LEACH:  They definitely would say that, and I

3  would disagree because -- under the argument you've already

4  heard.

5         THE COURT:  All right.  Anything else?

6         MR. LEACH:  Nothing else.

7         THE COURT:  I'll give you a chance to reply.

8         And I do want to thank both attorneys for

9  cooperating to schedule this hearing on somewhat short

10  notice.  I just got stymied working on this and thought it

11  would benefit me to hear from counsel.  And I don't mean, by

12  any measure, to try to increase the attorney's fees involved in

13  this dispute.  It is a unique and confined issue, and I wanted

14  to see if we could have a hearing when I'm already out here on

15  other matters.

16         Mr. Williams, argument on behalf of the defendants.

17  Please remain seated, of course.

18         MR. WILLIAMS:  Thank you, Your Honor.

19         May it please the Court and counsel.  In researching

20  this -- and I wanted to address this initially because the Court

21  brought it up -- I have not found a single case in this entire

22  country that grants attorney's fees for an ex parte TRO.  And I

23  think this is important because of the ex parte nature of this

24  TRO.

25         THE COURT:  I want to look at *Common Cause*

1    *Georgia v. Georgia*, the Eleventh Circuit case.  Because there

2    there was a temporary restraining order that was entered.

3    And I'm not -- usually -- well, if Rule 65(b) is being followed, a

4    temporary restraining order is ex parte.  I realize sometimes

5    the procedure gets a bit muddled, but the Eleventh Circuit in

6    that *Common Cause* case did affirm a grant of attorney's fees.

7    And it's a complicated case factually, but there's no doubt

8    *Common Cause* started out wanting more relief than it ended

9    up getting; but, nevertheless, the Eleventh Circuit affirmed

10    because the temporary restraining order marked a change in

11    the legal relationship between the parties, it altered the

12    secretary's conduct, the defendants' conduct, and benefited

13    Common Cause in its members.

14         So I pause, Mr. Williams, because I'm not sure the

15    Eleventh Circuit case is -- it does seem to be the best case

16    from an appellate court for the plaintiffs here.  Go ahead and

17    address it.

18         MR. WILLIAMS:  Your Honor, what I would say to

19    that is -- I have that case in front of me.  And if you turn to

20    page 105.

21         THE COURT:  I have the case in front of me too.

22         MR. WILLIAMS:  It actually indicates the district

23    court held a hearing on the motion, which is quite a bit

24    different than ours.  And I would -- it's the paragraph that

25    begins on November 7th, 2018.  And into that paragraph it

1    states the district court held a hearing on the motion the next

2    day.  So I think that's a far different creature than what we're

3    dealing with here today.

4              THE COURT:  Do we know if that hearing was ex

5    parte or not?

6              MR. WILLIAMS:  The beginning of that paragraph

7    talks about expedited discovery, including expedited discovery

8    and other matters.  So that would lead me to believe that there

9    was a hearing on that TRO.

10             THE COURT:  All right.  Go ahead.

11             MR. WILLIAMS:  So I think, getting back to my

12   point, I couldn't find one on an ex parte TRO that didn't have

13   actually a hearing.  And this is important because, when you

14   look at a preliminary injunction compared to an ex parte TRO,

15   as the Court is well aware, on a preliminary injunction there's

16   briefing from both sides.  You have a hearing, often

17   evidentiary.  You introduce exhibits.  You call witnesses.  And,

18   in fact, you're making a decision, frankly, on the merits.  And I

19   have no doubt that a preliminary injunction is appealable.  No

20   doubt in my mind.

21             Temporary restraining order ex parte without notice

22   is a different creature entirely.  It is issued very, very quickly,

23   as the Court noted, between June 20th, the complaint being

24   filed, and June 22nd, the TRO being issued.

25             THE COURT:  What about Mr. Leach's argument

1    that, while the Court did grant a temporary restraining order,

2    it was one that didn't, as other TROs do, preserve a status quo

3    because it effectively enjoined enforcement of a policy that had

4    about three years of age on it at the time, and it applied the

5    *Dataphase* factors, the preliminary-injunction-type factors.  So

6    while it's a temporary restraining order, it's also, I think, 17

7    pages long, and perhaps the writing was on the wall for how

8    the *Dataphase* factors might sort out.  And, above and beyond

9    that, upon receipt of the Court's Opinion and Temporary

10   Restraining Order, the defendants initially agreed to renewal

11   for 14 days, and then, through counsel, agreed that the

12   Temporary Restraining Order -- I'm not sure if it's right to say

13   would remain in place, because under Rule 65(b) it really

14   can't, but that the parties would -- or the defendants would

15   abide by the terms of the Temporary Restraining Order, at

16   least for the time being, and no preliminary injunction hearing

17   need be set.  Doesn't that really transform this -- maybe not

18   into a preliminary injunction, per se, but transform the

19   temporary restraining order into something greater, something

20   that did, in fact, alter the relationships between the parties

21   and provided the relief to the plaintiffs that they were seeking?

22          MR. WILLIAMS:  Your Honor, I'll start by addressing

23   the first part.  Again, this was a TRO without notice, without

24   opportunity for the general safeguards for a preliminary

25   injunction where you have briefing, you'd have a hearing,

1    you'd have evidence.

2         And then we get to the second part where the Court

3    did note in its TRO that it was applying the *Dataphase* factors,

4    but they didn't really apply to a TRO.  I think it was doing that

5    as just a way of seeing its way through this, a way of making

6    an analogy.

7         And this did not get turned into a preliminary

8    injunction, specifically based on what the parties talked about

9    was *We won't violate the terms of the TRO.*  Had the parties

10   wanted to turn this into a permanent injunction or a

11   preliminary injunction, they certainly could have by

12   stipulation and by entering that order with the Court.  That

13   was never done.

14        And then we get to sort of the next thing is --

15        THE COURT:  Were you ever asked to stipulate to it

16   becoming a preliminary injunction and respond no?  Was

17   there any discussions of that?

18        MR. WILLIAMS:  Your Honor, I'm recently new to

19   this case, so I wasn't involved in the prior discussions, but not

20   to my knowledge.  Mr. Leach may have other information on

21   that.

22        And then we get to, okay, you guys did do -- the

23   defendants did do --

24        THE COURT:  I guess I'll ask Mr. Leach this

25   question.

1           Doesn't taking that approach have the risk of

2     penalizing counsel for trusting the defendants' counsel and

3     not forcing the defendants' counsel to stipulate to a

4     preliminary injunction to be entered or to appear before the

5     Court for a preliminary injunction hearing, in which case the

6     defense counsel may say, *Well, we don't* -- I don't know if they

7     would have said *We don't oppose a preliminary injunction* or

8     what they would have said at that hearing, but they would

9     have been put on the spot, certainly, and maybe a little bit

10    peeved at Mr. Leach for not trusting them.  In other words,

11    isn't there kind of a concern here of punishing counsel for

12    trusting opposing counsel?

13          MR. WILLIAMS:  I don't know it's punishing.  I

14    think, from what I heard today, was, *Hey, look, we're not going*

15    *to violate the terms of the Temporary Restraining Order.*  That is

16    a far cry from saying *We'll agree to an entry of a preliminary*

17    *injunction.*  And it's not difficult for the parties to make that

18    stipulation and file that with the Court and then have that be

19    the Court's ruling if the Court should so agree.

20          So I guess if it's what the parties wanted, they

21    certainly could have done that.  They did not.  They agreed to

22    abide by the terms of the TRO.

23          And then we get to, *Okay, well, you followed -- you*

24    *did what we wanted.*  Of course that goes back to *Buckhannon*

25    that says voluntary cessation alone is not enough for the

1    imposition of attorney's fees.

2         THE COURT:  Right.  It requires a judicial

3    imprimatur.

4         MR. WILLIAMS:  Yeah.  And the judicial imprimatur

5    here is not -- there is not one.  A temporary restraining order

6    is not an appealable order.  It doesn't fall into what you saw in

7    *Rogers.*  It doesn't fall into the language from *Buckhannon* that

8    stated *These decisions, taken together, establish that*

9    *enforceable judgments on the merits and court-ordered consent*

10   *decrees create the material alteration of the legal relationships*

11   *of the parties necessary to prevent an award of attorney's fees.*

12        And as outlined in our brief, a TRO, ex parte TRO, is

13   not really a decision on the merits.  It's not appealable.  It's

14   not a judgment.  And secondarily, as the Court notes in its

15   opinion and order on it, there are other facts that this Court

16   may have liked to hear at a preliminary injunction.

17        THE COURT:  Was there ultimately any dispute

18   about -- well, obviously the policy was adopted, I think, in

19   year 2020, if I recollect right.  Was there any dispute about

20   the policy was given to this petition circulator to trigger the

21   lawsuit?  Was that ever genuinely a dispute?

22        MR. WILLIAMS:  Your Honor, I don't think there was

23   any facial dispute that the policy was as how the policy read.

24        THE COURT:  And that the policy was given to some

25   petition circulator.

1    MR. WILLIAMS:  I don't think that's disputed.

2    THE COURT:  Okay.  All right.

3    MR. WILLIAMS:  So basically we get back to what

4    the Court initially raised is that, you know, there is no -- and

5    we talk about the Eleventh Circuit, that being different than

6    there being a hearing in that.  Even outside the Eighth Circuit,

7    I could not find a case that allowed the grant of attorney's fees

8    on a ex parte TRO.  And it's for those very reasons.  A

9    preliminary injunction, sure, and that's in the *Cheyenne River*

10    the Court even said --

11    THE COURT:  I've got to say, I didn't read the

12    District of Nebraska case.  It's obviously not binding

13    precedent.  It's persuasive.  Was that an ex parte TRO that

14    was involved in that case?

15    MR. WILLIAMS:  It wasn't, Your Honor.  In fact, on

16    page -- it's an unpublished decision -- but on page -- I've got

17    the asterisks 4.  She received a victory via a stipulated

18    temporary restraining order in that matter.  So it was not, in

19    fact, a TRO, ex parte TRO.  The parties, in fact, agreed to

20    stipulate that.  Whether, of course, that -- whether that

21    opinion is --

22    THE COURT:  Well, could we say here there's a

23    stipulated TRO in that it was by agreement that the TRO

24    extend another 14 days?

25    MR. WILLIAMS:  I would say that that's probably not

1    right, Your Honor.  The judicial imprimatur in this case was

2    the Court's granting of the ex parte TRO.  And the defense

3    simply said *We're not going to violate that, and so there's no*

4    *reason for you to go forward at this point.*  But, again, at that

5    point it was saying *We're not going to violate a TRO,* and then,

6    okay, the plaintiffs moved to move the case based on the

7    voluntary cessation of the policy.  And, again, voluntary

8    cessation has been long overruled as being a justification for

9    the implication of attorney's fees.

10           THE COURT:  Right.  It can't be just it's the catalyst

11   alone under *Buckhannon.*

12           MR. WILLIAMS:  They reject the catalyst theory.

13           So we get back to, you know, at the end of the day,

14   we're just sitting here with an ex parte TRO for which the

15   protections of a preliminary injunction aren't in place, which

16   would include, you know, crossbriefing, again, Your Honor,

17   the hearing, the evidence, and the witnesses.  So it's pretty

18   clear in the law that that ex parte TRO is not a final judgment

19   on the merits, and it does not provide the judicial imprimatur

20   that's required by *Buckhannon* and *Cheyenne River.*

21           Thank you, Your Honor.

22           THE COURT:  Thank you.  I'm just thinking whether

23   if I have any further questions for you, Mr. Williams, before I

24   let Mr. Leach respond.

25           Mr. Leach, you may go ahead and give the reply

1    argument.

2              MR. LEACH:  Sure.  I think there are just three

3    points that came up I would like to address.

4              Mr. Williams argued that not violating a temporary

5    restraining order that one has agreed to extend is different

6    than agreeing to a preliminary injunction, and I don't see how.

7    They both bind the defendant to obey the stipulated temporary

8    restraining order, just as a preliminary injunction does.  The

9    only thing that's different is the form of words that lawyers

10    use to talk about the two.  They don't have any different

11    actual effect on the ground.

12              You asked a question about the possibility that I

13    could have asked Ms. Rebecca Mann, who was the defense

14    attorney at the time, about stipulating to preliminary

15    injunction.  There wasn't any discussion like that.  I

16    remember when her email came in saying they weren't going

17    to challenge the temporary restraining order.  They agreed to

18    continue to obey it.  It never occurred to me to say, *Well, that's*

19    *not good enough.  I won't rely upon your word, even though it's*

20    *here in writing.  I'm going to tell the Court that I want a hearing*

21    *on an application for preliminary injunction.*

22              And I think she would have justly said *Why?*  And I

23    think the Court at some point would have justly said *Why?*

24    And I just think that, you know, we're entitled to -- I mean, I

25    think it was reasonable not to go forward, as opposed to

1    saying, *Well, I don't want you to be able to make an argument*

2    *later that I don't get my attorney's fees so I'm going to insist on a*

3    *hearing on a preliminary injunction.*  I don't think that's a good

4    way for lawyers to deal with the courts or other attorneys.

5         And then, finally, I want to push back on this

6    argument that Mr. Williams made that this was ex parte.  If

7    you look at Document 36-1, it's the email that I sent to two

8    state's attorneys for Lawrence County as soon as I filed this.

9         THE COURT:  I hesitate to embrace that argument,

10   Mr. Leach, knowing that the lawsuit was started, filed, on -- I

11   think it was June 20.

12        MR. LEACH:  Yes.

13        THE COURT:  And the Temporary Restraining Order

14   issued on June 22 at the end of the day.  But, still, we're

15   talking about 48 hours.  And, yes, it's -- Lawrence County

16   really is the defendant, the commissioners in their official

17   capacity.  And, yes, they have counsel who get notice that

18   you're making the application.  Rule 65(b) requires you to give

19   notice.  But it was ex parte.  I didn't hear from anyone from

20   Lawrence County before entering the Temporary Restraining

21   Order.  So I do think that initial Temporary Restraining Order

22   entered June 22, 2023, has to be considered ex parte.

23        Now, I think your better argument is, well, they

24   received notice of it.  They agreed or stipulated -- maybe not

25   stipulated in a formal sense -- but agreed to a 14-day

1   extension, and thereafter agreed to abide by it.  So at that

2   point perhaps it loses the ex parte flavor in that they've

3   reviewed it and deemed to accept it.  But Mr. Williams still has

4   the argument, the judicial imprimatur, if you will, was on

5   June 22, 2023.  That's the ruling the Court made.  At that

6   point it does appear ex parte.  *Common Cause Georgia v.*

7   *Georgia*, perhaps there's a way of figuring out whether the

8   hearing that's referenced in that decision was ex parte or not;

9   but are you aware of any other decisions, where based on a

10  temporary restraining order obtained ex parte, albeit one that

11  doesn't freeze the status quo but rather provides the relief

12  being sought by the plaintiff, justifies attorney's fees when

13  there's no preliminary injunction or no other judgment that

14  follows?

15          MR. LEACH:  Well, I'm not.  But I don't think those

16  are our facts here, based on their agreement that the

17  Temporary Restraining Order -- that they would follow it and

18  that it stayed in effect for 110 days, became appealable,

19  et cetera.  So I think that's what completely takes this case

20  out of the situation where all there was was a Temporary

21  Restraining Order, which I would say still -- if that's all there

22  was, we still have the judicially sanctioned material alteration,

23  but we don't have to get to that difficulty.

24          THE COURT:  All right.  I hesitate to say this is a

25  case of first impression.  It just has unique facts that make it

1    a bit peculiar to fit into what really is fairly well-established

2    law.  The Supreme Court has had, in *Sole* and *Buckhannon*,

3    opportunities to address what it means to be a prevailing

4    party, and there is established Eighth Circuit law on that.

5    But this is a unique set of circumstances to fit into that.

6           I appreciate counsel's argument.  I am going to issue

7    a written opinion and order.  I want to cogitate on this a bit

8    more.  As you know, I can do quick with the temporary

9    restraining order coming the day after the case was assigned,

10    and I apologize for being slow here in reaching this decision.

11    Obviously it doesn't have the sort of immediacy to it that an

12    application for a temporary restraining order does, but I do

13    intend to get a decision out reasonably soon.  So the matter is

14    taken under advisement.

15           Thank you all for your time and your argument.

16           MR. LEACH:  Can I just leave you with a final

17    thought?

18           THE COURT:  I suppose, but I'll give Mr. Williams,

19    then, an opportunity to leave me with his final thought.

20           Go ahead, Mr. Leach.

21           MR. LEACH:  It's just that if your decision is on

22    these facts that I don't get attorney's fees, next time I've got to

23    bother you and say, *Judge, I need a hearing on a preliminary*

24    *injunction, even though the defense says they're not going to*

25    *challenge this.*

1       THE COURT:  Oh, you're never a bother, Mr. Leach.

2       Any final thought, Mr. Williams?

3       MR. WILLIAMS:  Yeah, Your Honor.  My final

4   thought to that matter was Plaintiffs were well aware

5   attorney's fees were in dispute even before they filed their

6   motion to dismiss as mootness.  It's in Document Number 25.

7   It specifically says *This policy makes all issues moot except*

8   *attorney's fees and costs.*  The order issued by the Court says

9   we're still disputing attorney's fees and costs.  So the

10  application of attorney's fees was never like a bait and switch.

11  That has always been contended.

12      THE COURT:  I understand the parties weren't

13  negotiating -- or maybe they did discuss, *What about*

14  *attorney's fees?* -- but there was no decision reached on

15  attorney's fees.  This issue is legitimately preserved by both

16  parties.  This isn't a bait and switch on the issue of attorney's

17  fees.  That never was agreed to -- maybe never even

18  discussed -- but never agreed to when the defendant said *We'll*

19  *not dispute extending the TRO 14 days.  We'll not behave in a*

20  *way that contravenes the TRO.  Let's get on our way.*  No.  I

21  don't think either party behaved in bad faith here, if that's

22  what your implication is.  No.

23      And I do actually appreciate that the parties were

24  able to take a hard look at the case, perhaps aided by the

25  opinion that I had issued on the Temporary Restraining Order,

1    and figure something out short of further litigation.

2            All right.  The matter is under advisement.  Court is

3    adjourned.

4        (Proceedings concluded at 12:45 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT)
2    DISTRICT OF SOUTH DAKOTA    : SS   CERTIFICATE OF REPORTER
    SOUTHERN DIVISION       )

3         I, Carla Dedula, Official United States District Court
Reporter, Registered Professional Reporter, Certified Realtime
4    Reporter, and Notary Public, hereby certify that the above and
foregoing transcript is the true, full, and complete transcript of
5    the above-entitled case, consisting of pages 1 - 27.

6         I further certify that I am not a relative or employee or
attorney or counsel of any of the parties hereto, nor a relative
7    or employee of such attorney or counsel, nor do I have any
interest in the outcome or events of the action.

8

9         IN TESTIMONY WHEREOF, I have hereto set my hand
this 20th day of August, 2024.

10

11   _____

12   CARLA DEDULA RPR, CRR, CRC
     400 S. Phillips Avenue
13   Sioux Falls, SD 57104
     Phone: (605) 330-6669
14   Email:  carla_dedula@sdd.uscourts.gov
     My Commission Expires:  May 24, 2026

15

16

17

18

19

20

21

22

23

24

25